FILED & JUDGMENT ENTERED
Steven T. Salata

July 31 2023

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **GRAYSON O COMPANY**, | ) | Chapter 11 |
| | ) | Case No. 23-50124 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| **GRAYSON REAL ESTATE, LLC**, | ) | Chapter 11 |
| | ) | Case No. 23-50125 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER DENYING MOTION TO TRANSFER VENUE OF CASE**

**THIS MATTER** is before the court on the Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Case (the "Motion") filed by the Bankruptcy Administrator on May 31, 2023. The Motion asks the court to transfer the above-captioned cases to the Middle District of North Carolina under 28 U.S.C. § 1408, or, in the alternative, under § 1412 in the interest of justice or for the convenience of the parties. The court held a hearing on the Motion on June 15,

2023. Shelley K. Abel, the Bankruptcy Administrator; Richard S. Wright, counsel for both Debtors; and Walt Pettit, counsel for Newtek Small Business Finance, LLC, appeared.[1] For the reasons that follow, the court denies the Bankruptcy Administrator's Motion.

## FINDINGS OF FACT[2]

Grayson O Company (the "Operating Debtor") and Grayson Real Estate, LLC (the "Real Estate Debtor") filed voluntary petitions under subchapter V of Chapter 11 of the Bankruptcy Code in the Western District of North Carolina (the "Western District") on May 15, 2023. Van D. Stamey ("Van"), president of the Operating Debtor and manager of the Real Estate Debtor, appeared at the June 15 hearing and testified as to the facts below.

The Operating Debtor manufactures hair care products for wholesalers, whose customers include salons, retailers, and catalog sellers of beauty supplies. Van's father, Grayson O. Stamey ("Grayson"), founded the Operating Debtor in July 1973. In 1987, Van took over from his father and gained a controlling interest in the company. In March 1993, the Operating Debtor moved into a newly-constructed warehouse on a 27-acre tract of land at 6509 Grayson Lane in Kannapolis (the "Plant") in the Middle District of North Carolina (the "Middle District"). At that time, Grayson and his wife Edith owned the tract. Van formed the Real Estate Debtor on

---

[1] Lance P. Martin, the subchapter V Trustee, was present at the hearing by telephone.
[2] To the extent that any finding of fact also contains or may constitute a conclusion of law, it should be considered as such.

2

October 16, 2008 to own the Plant property. See Debtors' Ex. 2. Edith and Grayson deeded that property to the Real Estate Debtor on October 30, 2008. Debtors' Ex. 3.

Van has lived at 259 Waddell Road in Mooresville, North Carolina (the "Residence") since finishing college in 1985. The Residence lies within the Western District. Van's son, Jared Stamey ("Jared"), is a minority shareholder in and Vice President of the Operating Debtor. Jared is Van's "right-hand man" and has been since he joined the company in 2014. At some point before 2019, Jared also began living at the Residence with Van.

Van's mother, Edith, suffered a stroke in September 2019. Shortly after, she and Grayson moved into the Residence with Van and Jared. To care for Grayson and Edith, Van and Jared began spending most of their time at the Residence, continuing to oversee the company's operations while working from home. After the covid pandemic began in early 2020, both officers continued to spend the majority of their working time at the Residence. Because of the pandemic and fears of infecting Edith and Grayson, Van testified that he did not leave the Residence for much other than the occasional trip to the grocery store.

Edith Stamey passed away in January of 2021, and Grayson passed away in April of 2022. Neither Van nor Jared changed their work habits after Edith and Grayson passed away. Van works at the Residence 95% of the time, and Jared works there around 60% of the time. Both Debtors keep business records at the Residence and the Plant. Van testified that he has hosted dozens of clients at the Residence to discuss company business. Additionally, Van and Jared have unscheduled daily

3

meetings at the Residence to discuss the company's operations. There are no other executives of similar ranking for either Debtor.

The Operating Debtor and the Real Estate Debtor receive mail at P.O. Box 278, Kannapolis, NC 28082 (the "P.O. Box"). In late 2022, the N.C. Secretary of State sent a warning that the Real Estate Debtor would be administratively dissolved if it did not file its annual report. See Debtors' Ex. 5. Neither Van nor Jared saw the notice at the time. The Secretary of State administratively dissolved the Real Estate Debtor on March 17, 2023. See Debtors' Ex. 6. After being notified of the dissolution, Van quickly moved to reinstate the Real Estate Debtor with the aid of its outside counsel. In March and April of 2023, Van filed annual reports for both the Real Estate Debtor (for fiscal years ending on 12/31/2021 and 12/31/2022) and the Operating Debtor (for the fiscal year ending on 12/31/2022). The annual reports filed in 2023 list the Residence as the "Principal Office Street Address." Bankr. Admin. Ex. A. This was a change from the old reports that list the Plant address as the principal office. Bankr. Admin. Ex. B.

Both companies filed for bankruptcy due to supply chain issues and depressed demand due to the covid pandemic. The Operating Debtor, on account of its inability to manufacture products (as it lacked the raw materials necessary to do so) and the depressed wholesale demand (as most salons had closed during the pandemic), furloughed employees and ceased the Plant's operations at various points. When the Plant was not operating, Van and Jared would still work remotely from the Residence. The Debtors are currently pursuing a sale of part of the real property

4

owned by the Real Estate Debtor (including the Plant) and have been in negotiations with a potential buyer.

## CONCLUSIONS OF LAW[3]

### *I. Venue Under 28 U.S.C. § 1408*

The Bankruptcy Administrator first argues that venue in this court is improper under 28 U.S.C. § 1408. The relevant part of § 1408 states that:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district –
>
> (1) in which the domicile, residence, **principal place of business** in the United States, or principal assets in the United States, of the person or entity that is the subject of such case **have been located for the one hundred and eighty days immediately preceding such commencement**, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district . . . .

28 U.S.C. § 1408 (emphasis added). The statutory term " 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities" and is sometimes referred to as the "nerve center" of the company. Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010).

A debtor's choice of forum is presumed to be "a proper district for venue purposes and the party challenging a debtor's choice must show by a preponderance of the evidence that the venue is improper." In re Honeycutt, No. 12-06921-8, 2012

---

[3] To the extent that any conclusion of law also contains or may constitute a finding of fact, it should be considered as such.

WL 6681833, at *2 (Bankr. E.D.N.C. Dec. 21, 2012) (quoting In re Mid Atl. Retail Grp., Inc., No. 07-81745, 2008 WL 612287, at *2 (Bankr. M.D.N.C. Jan. 4, 2008)); see also In re Balt. Food Sys., Inc., 71 B.R. 795, 798–99 (Bankr. D.S.C. 1986) ("Movants have the burden of proving that venue is improper . . . ."). The Bankruptcy Administrator's argument is that the nerve center of both the Operating Debtor and the Real Estate Debtor is at the Plant in the Middle District and not at the Residence in the Western District. For the reasons that follow, the Bankruptcy Administrator has not met her burden.

The nerve center is "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)" but is "the actual center of direction, control, and coordination." Hertz, 559 U.S. at 93. Courts are in "virtual consensus on the fact that the determination of a debtor's principal place of business is a question of fact." In re Great Lakes Hotel Assocs., 154 B.R. 667, 671 (E.D. Va. 1992) (collecting cases).

Here, the court finds that the nerve center for the Operating Debtor and the Real Estate Debtor is at the Residence in the Western District and not at the Plant in the Middle District. Van and Jared hold meetings at the Residence daily to discuss the company's operations and spend the majority of their working hours there. Indeed, as Van testified, he spends 95% of his business time working from the Residence and Jared spends 60% of his business time there. Van has had dozens of meetings with clients in his home office. See, e.g., Debtors' Ex. 4 (photograph of home office).

6

Van and Jared working from the Residence is not a new arrangement, nor is it simply an occasional one. Both executives have worked there since as far back as late 2019—that is, for a far longer period than the 180-day period contemplated by section 1408. This case is not simply an instance of a business owner conducting a small part of his business from a home office. See In re Ikon Weapons, LLC, No. 22–30424, slip op. at ¶ 5 (Bankr. W.D.N.C Oct. 3, 2022) (Order Granting Motion to Transfer Case to Middle District of North Carolina). In Ikon Weapons, the debtor argued that venue was proper in the Western District because its principal routinely made phone calls from his home office late at night "due to time differences with . . . oversea[s] vendors and business contacts," id., but the "direction of the [d]ebtor's business operations and control of its employees [took] place" in its office in the Middle District, id. at ¶ 9. The court in Ikon Weapons found that the debtor's principal simply negotiated and made sales from his home office and did not actually "direct[], control[], [or] coordinate[] the business's activities from home." Id. Here, the Debtors' officers did much more than make a few late-night phone calls from the Residence.

Van and Jared regularly worked remotely and oversaw operations of the company from the Residence, whether the Plant was operating or not. It is clear that the nerve center, the place where the "direction, control, and coordination" of the Operating Debtor and Real Estate Debtor occurred, was at the Residence. Hertz, 559 U.S. at 93. Because both Debtors had their principal place of business located in the Western District (at the Residence) for more than 180 days preceding the

7

commencement of their cases on May 15, 2023, venue of their Chapter 11 cases is proper in this district.

## II. *Change of Venue Under 28 U.S.C. § 1412*

The Bankruptcy Administrator argues alternatively that venue would be more convenient in the Middle District or that it would facilitate the interest of justice to transfer the cases there. See 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."); FED. R. BANKR. P. 1014(a) ("The court . . . may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.").

Since the venue of these Chapter 11 cases is proper under § 1408, the Debtors' "choice of forum is to be accorded substantial weight and deference." In re PWS Holding Corp., Nos. 98-212 through 98-223, 1998 Bankr. LEXIS 549, at *4–5 (Bankr. D. Del. Apr. 28, 1998); see also In re Enron Corp., 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) (similar). This court "exercises its power to transfer cases cautiously" in cases where venue is proper under § 1408. In re Bestwall LLC, 605 B.R. 43, 51 (Bankr. W.D.N.C. 2019) (quoting In re Land Stewards, L.C., 293 B.R. 364, 369 (Bankr. E.D. Va. 2002)).

### A. *The Convenience of the Parties*

Generally, there are six factors that courts evaluate when determining whether one venue would be more convenient to the parties:

> (1) The proximity of creditors of every kind to the court; (2) the proximity of the Debtor to the court; (3) the proximity of the witnesses necessary to the administration of the

8

estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur.

Id. at 53 (quoting In re Lakota Canyon Ranch Dev., LLC, No. 11-03739-8, 2011 WL 5909630, at *3 (Bankr. E.D.N.C. June 23, 2011)).

Here, the factors do not support transferring the cases to the Middle District. "The consideration given the most weight is the economic and efficient administration of the estate." In re Dunmore Homes, Inc., 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (citing In re Enron Corp., 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002)). Since both corporate officers live in this district and maintain their offices at the Residence, the cases would be more economically and efficiently administered in this district. See In re First Fruits Holdings, LLC, No. 18-02135-5, 2018 WL 2759384, at *1–2, 4 (Bankr. E.D.N.C. June 6, 2018) (concluding that "[t]he case will be more economically and efficiently administered" in the district where two of three managing members who were "responsible primarily for the [d]ebtor's operations" were located). Additionally, because the Plant itself is closer to the Western District than the Middle District, the case would be more efficiently administered from the Western District. The Plant is 30.4 miles from the Statesville courthouse and 29.7 miles from the Charlotte courthouse (Western District), but it is 56.2 miles from the Winston-Salem courthouse and 68.7 miles from the Greensboro courthouse (Middle District). Debtors' Ex. 11.

Furthermore, the Western District is more convenient for the Debtors and their creditors. The attorney representing the primary secured creditor appeared at the June 15 hearing in opposition to the Bankruptcy Administrator's Motion, and the

9

Western District is closer to the majority of unsecured creditors by both number and by claim amount, Debtors' Ex. 12 ($214,461.39 owed to 14 creditors in the Western District versus $79,507.17 owed to 10 creditors in the Middle District). The Western District is also closer to the Debtors, as this factor concerns "the corporation's employees who must appear in court, not . . . the employees who are on the production line." Commonwealth of P.R. v. Commonwealth Oil Refin. Co. (In re Commonwealth Oil Ref. Co.), 596 F.2d 1239, 1248 (5th Cir. 1979). The Western District courthouses in Statesville and Charlotte are much closer to the Residence (15.7 miles and 30.9 miles, respectively) than either the Winston-Salem courthouse (60.3 miles) or the Greensboro courthouse (88.3 miles). Debtors' Ex. 11.

In addition, a Chapter 11 case anticipating liquidation of assets should require few if any witnesses other than the debtor's officers. See First Fruits, 2018 WL 2759384, at *4 ("Beyond the representative officers of the Debtor, the court does not anticipate that this liquidating case will require significant witnesses as part of the administration."). The Debtors anticipate the sale of part of the Real Estate Debtor's property, as Van testified at the June 15 hearing. As the expected witnesses are closer to the Western District, the proximity of witnesses factor also points against transfer. Thus, the weight of the convenience factors support maintaining the cases in the Western District.

### B. *The Interest of Justice*

Courts also consider several factors to determine whether the interest of justice supports changing the venue of a case. There is significant overlap between the convenience factors and these factors. See In re Pinehaven Assocs., 132 B.R. 982, 990

10

(Bankr. E.D.N.Y. 1991) ("As a practical matter, in most cases, . . . if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer."). Some of these factors include:

> (1) [W]hether transfer promotes the economic and efficient administration of the bankruptcy estate; (2) whether transfer facilitates judicial economy; (3) the parties' ability to receive a fair trial in either venue; (4) whether either forum has an interest in deciding controversies within its jurisdictional borders; (5) whether transfer would affect the enforceability of any judgment rendered; and (6) whether the debtor's original choice of forum should be disturbed.

Bestwall, 605 B.R. at 51 (citing Brown v. Wells Fargo, N/A, 463 B.R. 332, 338 (M.D.N.C. 2011)). The court does not see any reason that justice would be better served in the Middle District.

At its core, the key consideration in determining the interest of justice is "whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990); see also Yolo Cap., Inc. v. Normand, No. 17-CV-00180, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018) ("Not all of these . . . factors are weighed equally, however, as the most important of these factors is the economic and efficient administration of the estate.") (citation omitted).

Most importantly, as noted above, the estates would be best administered in the Western District. Moving the cases to the Middle District would increase administrative expenses and costs since it is much farther from the Plant and the Residence (which serves as the principal place of business). Additionally, more

11

unsecured creditors reside in the Western District and counsel for the key secured creditor is based in Charlotte and opposed the motion to transfer venue, so it is more economical for creditors to maintain the case in this district. Therefore, the interest of justice factors do not support transferring the cases to the Middle District.

In the Motion, the Bankruptcy Administrator suggested that the Debtors may have attempted to "forum shop" when they updated the principal offices to the Residence in their annual reports in early 2023. Given Van's testimony that the Debtors consulted their usual corporate counsel, they had yet to engage bankruptcy counsel, and the officers had a longstanding practice of working at the Residence, the changed addresses do not appear to be an attempt to forum shop or manufacture venue.

## CONCLUSION

In conclusion, pursuant to 28 U.S.C. § 1408 the Debtor properly filed its bankruptcy case in the Western District, and under § 1412 neither the interest of justice nor the convenience of the parties would be best served by transfer to the Middle District. Thus, the Bankruptcy Administrator's Motion is **DENIED**.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court